```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                         WESTERN DIVISION
```

SUSAN BARNETT                                         PLAINTIFF

VS.                          CIVIL ACTION NO. 5:05-cv-195(DCB)(JMR)

THE TREE HOUSE CAFÉ, INC.;
HOLLY BECK, INDIVIDUALLY, AND
SAM SMITH, INDIVIDUALLY, AND IN
THEIR OFFICIAL CAPACITY AS AGENTS
AND REPRESENTATIVES OF THE TREE
HOUSE CAFÉ, INC.                                      DEFENDANTS

                  MEMORANDUM OPINION AND ORDER

     This cause is before the Court on the motion for summary
judgment **(docket entry 18)** filed by the defendants The Tree House
Café, Inc., and Holly Beck and Sam Smith, individually and in their
official capacity as agents and representatives of The Tree House
Café, Inc.  Also pending is the defendants' motion to strike
affidavits of Chris Barnett and Joyce McPherson **(docket entry 28)**.
Having carefully considered the motions and responses, the
memoranda and applicable law, and being fully advised in the
premises, the Court finds as follows:

     The plaintiff's complaint seeks relief pursuant to the
Americans with Disabilities Act ("ADA") and Title VII, as well as
state law claims.  The defendants have moved for summary judgment
on the following grounds: (1) defendants Holly Beck and Sam Smith
were not the plaintiff's employer as defined by the ADA and Title
VII; (2) the plaintiff did not have a disability as defined by the
ADA; and (3) the plaintiff cannot show that she was subjected to a

hostile work environment or that she was unlawfully discriminated against in violation of Title VII.

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Adcock v. International Paper Co., 809 F.Supp. 457, 459 (S.D. Miss. 1992) ("[s]ummary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists").  As noted by the Fifth Circuit,

> If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting [summary judgment] is proper. On the other hand, if reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, [summary judgment] should be denied, and the case submitted to the jury.  A mere scintilla is insufficient to present a question for the jury. However, it is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence  and inferences, and determine the credibility of witnesses.  The Court should consider all of the evidence -- not just that evidence which supports the non-mover's case -- but in the light and with all reasonable inferences most favorable to the party opposed to the motion [for summary judgment].

Molnar v. Ebasco Constructors, Inc., 986 F.2d 115, 117-18 (5th Cir. 1993)(citation omitted).

In an employment discrimination case, the Court should focus on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff. Grimes v. Texas Dept. of Mental Health, 102 F.3d 137 (5th Cir. 1996); LaPierre v. Benson Nissan, Inc., 86 F.3d 444 (5th Cir. 1996); Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir. 1993).  Unsubstantiated assertions are not competent summary judgment evidence.  Grimes, 102 F.3d at 139; Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994).  Nor are conjecture or speculation adequate to satisfy the nonmovant's burden.  See Little v. Liquid Air Corp., 37 F.3d 1069, 1079 (5th Cir. 1994).  The Fifth Circuit has held that an employee's self-serving generalized testimony stating her subjective belief that discrimination occurred "is simply insufficient to support a jury verdict in plaintiff's favor."  Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 268 (5th Cir. 1994).  Likewise, the Fifth Circuit has held that summary judgment may be appropriate in cases where elusive concepts such as motive or intent are at issue, if the nonmoving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation.  Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993).

## I. Individual Liability

As a preliminary matter, the defendants have moved for summary judgment in favor of the individual defendants, Holly Beck and Sam

Smith, on the grounds that they are not subject to individual liability under the ADA or Title VII.

Title VII prohibits discrimination by an "employer" on the basis of, inter alia, an employee's sex.  42 U.S.C. § 2000e-2. Title VII defines "employer" as "a person engaged in an industry affecting commerce ... and any agent of such a person." 42 U.S.C. § 2000e(b).  According a liberal construction to the term "any agent," the Fifth Circuit has found immediate supervisors to be employers under Title VII "when delegated the employer's traditional rights, such as hiring and firing," Harvey v. Blake, 913 F.2d 226, 227 (5th Cir. 1990), or "'if he participated in the decisionmaking process that forms the basis of the discrimination.'"  Hamilton v. Rodgers, 791 F.2d 439, 442-43 (5th Cir. 1986)(citing Jones v. Metro. Denver Sewage Disposal Dist., 537 F.Supp. 966, 970 (D. Colo. 1982)).  The Fifth Circuit has also considered factors such as whether the supervisor was responsible for the terms and conditions of the plaintiff's employment, or for the plaintiff's work assignment within the company.  Garcia v. Elf Atochem North America, 28 F.3d 446, 451 (5th Cir. 1994).  "The purpose of extending 'employer' status to immediate supervisors is to hold liable those with power over the plaintiff which exceeds that of mere co-workers."  Id.

A supervisor can only be held liable under Title VII, however, in his or her official capacity as an agent of the employer.  Grant

4

v. Lone Star Co., 21 F.3d 649, 652 (5ᵗʰ Cir.), cert. denied, 513 U.S. 1015 (1994).  An individual employee may not be he held personally liable for damages under Title VII.  Id. at 652-53.  The purpose of the "agent" provision in § 2000e(b) was to incorporate respondeat superior liability into Title VII, and the Fifth Circuit has expressly declined to extend the liability of individual employees beyond the respondeat superior principle.  Id. at 652.

Similarly, district courts within the Fifth Circuit have consistently held that individual defendants cannot be held liable for damages under the ADA.  Jenkins v. Bd. of Educ., 937 F.Supp. 608, 612 (S.D. Tex. 1996); Miller v. Giglio Distrib. Co., 899 F.Supp. 318, 319 (E.D. Tex. 1995); Rodriguez v. Corvel Corp., 2001 U.S. Dist. LEXIS 25714 at *15-16 (W.D. Tex. Feb. 26, 2001)(stating that the same rationale that denies individual liability under Title VII also precludes individual liability under the ADA).

Since individual employees cannot be held personally liable under Title VII or the ADA, any Title VII and ADA claims against Holly Beck and Sam Smith are without merit.  See Garcia, 28 F.3d at 451.  Furthermore, since the plaintiff also names her employer (The Tree House Café, Inc.) as a defendant, any Title VII and ADA claims against Beck and Smith in their official capacity are merely repetitive.  The employer alone is liable for any violations of Title VII or the ADA; therefore, claims against Beck and Smith as agents or in their his official capacity merge into claims against

the employer.  See Taylor v. Scottpolar Corp., 995 F.Supp. 1072, 1079 (D. Arizona, 1998); Gary v. Long, 59 F.3d 1391, 1399 (D.C. Cir. 1995); Sauers v. Salt Lake County, 1 F.3d 1122, 1125 (10th Cir. 1993); Saylor v. Ridge, 989 F.Supp. 680, 688 (E.D. Penn. 1998) ("because a suit against a defendant in his or her official capacity is nothing more than suit against the defendant's employing entity, dismissal of an individual defendant in their official capacity is appropriate")(citing Clarke v. Whitney, 907 F.Supp. 893 (E.D. Pa. 1995)(citing Kentucky v. Graham, 473 U.S. 159 (1985)); see also Dufrene v. Pellittieri, 1996 WL 495150 (E.D. La. 1996), and cases cited therein; Allen v. Tulane University, 1993 WL 459949 (E.D. La. 1993), and cases cited therein.  Thus, any Title VII and ADA claims against Beck and Smith in their official capacity are without merit as well.  The plaintiff's complaint therefore states only state law claims against Beck and Smith.


**II. ADA Discrimination**

The defendants move for summary judgment on Barnett's ADA claim.  The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

6

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  The ADA further defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(2).

To show that she comes under the definition of "qualified individual with a disability," the plaintiff must therefore show (1) that her physical impairment is a disability as contemplated by the ADA, i.e. that her impairment substantially limits a major life activity; or (2) that she has a record of, a history of, or has been misclassified as having an ADA-qualified disability; or (3) that she was regarded by the defendant as having an ADA-qualified disability, whether she actually had the disability or not. Dutcher v. Ingalls Shipbuilding, 53 F.3d 723 (5th Cir. 1995).

In order to state a prima facie case under the ADA, Barnett must show not only that she was "disabled" under the ADA, but also that

(2) she is a "qualified individual;"

(3) she was subject to an adverse employment action; and

(4) she was replaced by a non-disabled person or was treated less favorably than non-disabled employees.

7

<u>Aikens v. Banana Republic, Inc.</u>, 877 F.Supp. 1031, 1036 (S.D. Tex. 1995).

> If the plaintiff succeeds in making this <u>prima</u> <u>facie</u> showing, a rebuttable presumption of discrimination arises and the burden of production shifts to the employer to articulate a legitimate, non-discriminatory justification for its actions.

> If the employer meets its burden of production, the presumption is dissolved and the burden shifts back to the plaintiff to prove that the proffered reasons are a pretext for discrimination.

<u>Id</u>. (citations omitted).

The plaintiff alleges that she was diagnosed with fibromyalgia and treated for this condition sometime prior to October 11, 2004. Plaintiff's Brief, p. 6. She alleges elsewhere that the defendants "were aware of her medical condition and that Plaintiff Barnett suffered from fibromyalgia, chronic fatigue syndrome and depression." Plaintiff's Brief, p. 2. Barnett argues that she was substantially limited in three major life activities: standing, working, and caring for herself. Plaintiff's Brief, pp. 7-8.

Standing, working, and caring for oneself are all recognized as major life activities. <u>See</u> 29 C.F.R. § 1630.2(I); <u>Dutcher v. Ingalls Shipbuilding</u>, 53 F.3d 723, 726 (5th Cir. 1995). In order to determine if Barnett has an ADA-qualified disability, the Court must first determine whether Barnett is substantially limited in a major life activity other than working. If she is not substantially limited with respect to any other major life

activity, her ability to perform the major life activity of working will be considered.  If she is substantially limited in any other major life activity, no determination as to whether she is substantially limited in working is needed.  <u>Dutcher</u>, 53 F.3d at 726 n. 10 (quoting 42 U.S.C. § 12101(2)(A); 29 C.F.R. § 1630, App. § 1630.2(j)).

The ADA's definition of "disability" contemplates impairments that substantially limit those activities that are of central importance to daily life.  <u>Toyota Motor Manufacturing, Kentucky, Inc. v. Williams</u>, 534 U.S. 184, 196 (2002).  It is undisputed for purposes of the defendants' motion that one or more of Barnett's medical conditions amount to an impairment.  However, a plaintiff cannot merely submit evidence of a medical diagnosis of an impairment in order to prove disability status.  <u>Id</u>.  Instead, the ADA requires those "claiming the act's protection ... to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial."  <u>Albertson's, Inc. v. Kirkingburg</u>, 527 U.S. 555, 567 (1999).  To be substantially limited in performing a major life activity, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.  The impairment impact must also be permanent or long term."  <u>Williams</u>, 534 U.S. at 198.

9

Barnett offers no evidence that her impairment "substantially limits" the major life activity of standing. She offers only the unsubstantiated assertion that she "had the inability to stand for an excessive period of time." Plaintiff's Brief, p. 8. As previously stated, Barnett must show that the extent of the limitation caused by the impairment, in terms of her own experience, is substantial. In other words, the determination of whether an individual has a disability must be based on the effect of that impairment on the life of the individual. Kirkingburg, 527 U.S. at 566. The "plaintiff must prove a substantial limit with specific evidence that his particular impairment substantially limits his particular major life activity." Waldrip v. General Electric Co., 325 F.3d 652. The plaintiff has submitted no evidence of a restriction on standing imposed by a physician, nor has she demonstrated how her ability to stand is substantially limited.

As for the plaintiff's alleged inability to care for herself, "although referred to separately as a major life activity, the inability to care for oneself is simply the collective inability to do a combination of the various physical activities that make up the abstraction of 'caring for oneself.'" Hatfield v. Quantum Chemical Corp., 920 F.Supp. 108, 110 (S.D. Tex. 1996). Barnett offers no evidence on which a jury could find that her impairment substantially limited her in her ability to care for herself. In

10

fact, the only physical activity she mentions is "standing." Although her ability to stand for long periods of time may be affected, this is not sufficient to show a substantial limitation of a major life activity.

The Court now turns to the issue of whether Barnett's ability to work has been substantially limited. Substantial impairment of the major life activity of working occurs when one is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." <u>Dutcher</u>, 53 F.3d at 727. An inability to do one particular job does not qualify as a disability. <u>Id</u>.

Barnett has presented no evidence that she was unable to perform an entire class of jobs, or a broad range of jobs in various classes. The Court therefore finds that Barnett has failed to present any evidence from which a jury could find that her impairment substantially limits a major life activity. Accordingly, the plaintiff fails to qualify as disabled under § 12101(2)(A).

Nor has Barnett shown that she has a record of an impairment. The "record of such impairment" prong applies where an individual "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." <u>Burch v. Coca-Cola Co.</u>, 119 F.3d 305, 321 (5th Cir. 1997)(quoting 29 C.F.R. § 1630.2(k)). The plaintiff has not

provided any evidence that she has been classified or misclassified as having a physical impairment that substantially limits a major life activity.

Barnett also claims that she was regarded by her employer as having a disability under the ADA.  Under the ADA, an individual may qualify as disabled if she is "regarded as" having an impairment that substantially limits one or more major life activities.  Bridges v. City of Bossier, 92 F.3d 329, 332 (5th Cir. 1996).  A plaintiff may be regarded as disabled if she (1) has an impairment which is not substantially limiting but which the employer perceives as constituting a substantially limiting impairment; (2) has an impairment which is substantially limiting only because of the attitudes of others toward such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment.  Id.  In each instance, the impairment, whether real or imagined, must substantially limit a major life activity or be perceived as actually substantially limiting a major life activity.  Id.  The analysis of whether a plaintiff was regarded as disabled focuses on how the relevant decision makers perceived the plaintiff.  Deas v. River West, L.P., 152 F.3d 471, 476 (5th Cir. 1998).

In order to survive summary judgment, the plaintiff must show that her employer regarded her as being substantially limited in her ability to perform a major life activity.   See Pegram v.

12

Honeywell, Inc., 361 F.3d 272, 287 (5th Cir. 2004).  The plaintiff
does not indicate which major life activity her employer regarded
as being substantially limited by an impairment.  The Court
therefore assumes that she is alleging that the defendants believed
she was substantially limited in one or more of the major life
activities of standing, caring for herself, and working.

Even if the defendants knew that Barnett had an impairment,
there is no evidence that any of them regarded the plaintiff as
having a substantially limiting impairment of a major life
activity.  The mere fact that an employer was aware of an
employee's impairment does not by itself lead to the conclusion
that the employer regarded the employee as disabled.  See Gaston v.
Jack Post Corp., 971 F.Supp. 1084, 1087-88 (N.D. Miss. 1997).  The
employee has the burden of producing specific evidence that the
employer regarded her as being substantially limited as to a major
life activity.  See Dupre v. Charter Behavioral Health Sys. of
Lafayette, Inc., 242 F.3d 610, 616 (5th Cir. 2001).  Nothing in the
record provides support for the plaintiff's allegation that the
defendants perceived her as having more of an impairment than she
actually had.  The Court therefore concludes that the plaintiff was
not disabled within the meaning of the ADA, and her discrimination
claim under the ADA fails as a matter of law.

13

### III. ADA Retaliation

The plaintiff also raises an ADA retaliation claim, alleging that she "engaged in a [statutorily] protected expression regarding her disability and limitations."  Plaintiff's Brief, p. 9.  The anti-retaliation provision of the ADA reads as follows:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this chapter.

42 U.S.C. § 12203.  To state a claim for retaliation, a plaintiff must establish that (1) she engaged in an activity protected by the ADA, (2) she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action.  Seaman v. CSPH, Inc., 179 F.3d 297, 301 (5th Cir. 1999).

Barnett claims that she engaged in protected activity by requesting accommodation from her employer.  A retaliation claim can be based on a request for accommodations.  See Smith v. Tangipahoa Parish School Board, 2006 WL 3395938 (E.D. La. Nov. 22, 2006); Cutrera v. Board of Supervisors of Louisiana State University, 429 F.3d 108, 113 (5th Cir. 2005).  Although a plaintiff may not be disabled under the ADA, she may nevertheless pursue a claim for retaliation under the theory that her employer regarded her as disabled in light of her request for an accommodation.  See

14

<u>Dutton v. University Healthcare System, L.L.C.</u>, 136 Fed.Appx. 596, 599, 2005 WL 1007050, *3 (5th Cir. 2005)(noting that a plaintiff who is in fact not disabled may establish a claim of discrimination or retaliation under the "regarded as" prong).  However, as discussed above, the plaintiff has failed to meet the "regarded as" prong of the ADA.    The mere fact that her employer was aware of her impairment does not mean that the employer regarded her as disabled.  Barnett has not produced any evidence that any of the defendants regarded her as having more of an impairment than she actually had; therefore, her claim for retaliation under the ADA must fail as well.


**IV. Title VII Discrimination**

     The plaintiff also claims that she was subjected to a hostile work environment and was unlawfully discriminated against based on her gender in violation of Title VII because her supervisor, defendant Sam Smith, "made sexually discriminatory and harassing comments to Plaintiff Barnett, even in the presence of Defendant [Holly] Beck."  Complaint,  ¶¶ 12, 39.    In response to interrogatories requesting that she identify "every sexually discriminatory and harassing comment" made to her, the plaintiff identified only two:

     Defendant Smith advised me that if I would "lose the
     breast and grow some balls, I would be a better manager."
     He even once said, "Oh my gosh, she has grown some balls"
     when I had done something good.

15

Response to Interrogatories, No. 21, p. 20.  The plaintiff claims
that these statements support a claim for gender based hostile work
environment discrimination.

To prevail on her hostile work environment claim, Barnett must
prove that: (1) she belongs to a protected group; (2) she was
subjected to unwelcome harassment; (3) the harassment complained of
was based on her gender; and (4) the harassment complained of
affected a term, condition, or privilege of employment.  <u>Ramsey v.
Henderson</u>, 286 F.3d 264, 268 (5th Cir. 2002).  To satisfy the fourth
element, the complained of acts must be "sufficiently severe or
pervasive to alter the conditions of the victim's employment and
create an abusive working environment."  <u>Id</u>. (quoting <u>Harris v.
Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993)).

The EEOC Compliance Manual, § 615.3(a)(3), gives two examples
to illustrate its definition of hostile environment harassment:

> Example 1 – If a male co-worker of a female employee
> makes unwelcome sexual advances toward her, his conduct
> may, depending on the total circumstances, unreasonably
> interfere with her ability to do her work.  Likewise, his
> conduct may unreasonably interfere with the work
> performance of other employees, male or female.

> Example 2 – If certain male employees make sexual
> remarks, jokes, or gestures in the presence of or
> directed toward female employees, that conduct may make
> the work atmosphere intimidating or threatening for the
> female employees.

In the examples, the objectionable conduct may be sexual harassment
if it unreasonably interferes with an employee's work performance
or creates a negative work environment, even if it does not

16

constitute a term or condition of employment, and even if submission to or rejection of the conduct is not the basis of an employment decision.

In Harris, the Supreme Court overruled the holdings of several lower courts which had required a plaintiff to prove that the sexually harassing environment had seriously affected her psychological well-being.  The Court held that the harassment must be sufficiently serious so that a reasonable person would find the work environment hostile or offensive, and that the victim actually perceived the environment as abusive, but that Title VII comes into play before the harassing conduct leads to a nervous breakdown. Harris, 510 U.S. at 21-22.  However, the Court cautioned that "'mere utterance of an ... epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII's purview." Id. at 21 (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).

The application of the hostile environment theory to cases involving sex discrimination does not banish all physical and verbal conduct having sexual overtones from the workplace.  The mere request for a date, an off-color joke, or an isolated instance of more overt sexually oriented conduct do not constitute a sexually harassing environment.  The underlying conduct, whether it is physical or verbal, must rise to the level that a reasonable

17

person would find it interfering with his or her ability to perform on the job, or creating a work environment that is hostile, intimidating or offensive.

Ultimately, the <u>Harris</u> decision protects employers from the unduly sensitive plaintiff by requiring evaluation of the evidence under a reasonable person standard.  At the same time, it protects the employee from the unduly callous defendant by making it clear that sexual harassment under Title VII becomes actionable long before the plaintiff is severely psychologically injured.

The Fifth Circuit has reiterated that a plaintiff's proof must meet the legal standard of demonstrating conduct based on sex that is sufficiently severe or pervasive to have the purpose or effect of altering the conditions of employment or creating an abusive work environment, and that the test is an objective one.  <u>DeAngelis v. El Paso Municipal Police Officers Association</u>, 51 F.3d 591, 593 (5th Cir. 1995), citing <u>Meritor</u> and <u>Harris</u>.  This standard was discussed by Circuit Judge Edith Jones:

> A claim for a sexually hostile working environment is not a trivial matter.  Its purpose is to level the playing field for women who work by preventing others from impairing their ability to compete on an equal basis with men.  One must always bear this ultimate goal in mind.  A hostile work environment claim embodies a series of criteria that express extremely insensitive conduct against women, conduct so egregious as to alter the conditions of employment and destroy their equal opportunity in the workplace.  Any lesser standard of liability, couched in terms of conduct that sporadically wounds or offends but does not hinder a female employee's performance, would not serve the goal of equality.  In fact, a less onerous standard of liability would attempt

18

to insulate women from everyday insults as if they
remained models of Victorian reticence.

DeAngelis, 51 F.3d at 3-4.

Summary judgment in the employer's favor is mandated where the
plaintiff does not have significant, probative, admissible evidence
to support each essential element of her claim.  Accordingly,
summary judgment is proper in Title VII sexual harassment and
employment discrimination cases where essential proof is weak or
lacking.  See, e.g., Ellert v. University of Texas at Dallas, 52
F.3d 543, 545 (5th Cir. 1995)(summary judgment in Title VII sexual
harassment action proper where there was no probative evidence that
a supervisor "discuss[ed] sexual matters, cause[d] any physical
contact, or [made] any threats or promises related to [the
plaintiff's] rejection or acceptance of his affections"); Nash v.
Electrospace System, Inc., 9 F.3d 401 (5th Cir. 1993)(affirming
summary judgment granted to employer in sexually hostile
environment case).

A plaintiff may not oppose a motion for summary judgment based
on her beliefs or feelings, which do not, by themselves, create a
triable issue of fact.  Harris v. Home Savings Association, 730 F.
Supp. 298 (W.D. Mo. 1989).  Affidavits in opposition to motions for
summary judgment must be based on personal knowledge and not mere
conclusory assertions.  Id. at 304; Fed.R.Civ.P. 56(e).  As
numerous courts have observed, a hostile work environment claim
must be based on repeated conduct of a sexual nature, not merely

supervisory decisions that may be viewed as unfair, overbearing, nasty, or annoying by the employee.  See, e.g., Johnson v. Tower Air, Inc., 149 F.R.D. 461, 469 (E.D. N.Y. 1993).

In determining whether the alleged conduct was of a sexual nature and whether it was sufficiently severe and pervasive, the Court assesses the conduct in terms of its frequency, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. DeAngelis, 51 F.3d at 594.  The Court's inquiry is objective in nature, and cannot be based on subjective perceptions or conclusory assertions of the plaintiff.  DeAngelis, 51 F.3d at 594; Little v. Republic Refining Co., 924 F.2d 93, 96 (5th Cir. 1991).  The incidents relied upon must be of an overtly sexual nature and more than "sporadic" or "episodic."  They must be "repeated and continuous" in order to be deemed "pervasive."  Johnson, 149 F.R.D. at 469.

The events which form the basis of the Barnett's complaint do not involve explicit sexual remarks, physical contact, or sexual violence.  Although Barnett alleges that Smith made "negative comments" to her and mistreated her by being overly critical of her work, Plaintiff's Response to Interrogatory No. 18, she has presented only two instances of comments with a sexual context or connotation.  These two comments, while inappropriate or even boorish, do not rise to the level required to be actionable under

Title VII.  Title VII was "not designed to purge the workplace of vulgarity," for a certain amount of "vulgar banter, tinged with sexual innuendo" is inevitable in the modern workplace, particularly from "coarse and boorish workers."  <u>Bakerville v. Culligan Intern. Co.</u>, 50 F.3d 428, 430-31 (7th Cir. 1995). Considering the totality of the circumstances, and construing the alleged facts in the light most favorable to the plaintiff, the Court finds that she has not demonstrated the existence of a genuine issue of material fact, and that as a matter of law the conduct alleged was neither severe nor pervasive enough to support her claim.  Moreover, Barnett does not show that these remarks interfered with her work performance, or otherwise affected a term, condition or privilege of her employment.  <u>See</u> <u>Boyd v. State Farm Insurance Co.</u>, 158 F.3d 326, 330 (5th Cir. 1998).  Therefore, the plaintiff's hostile work environment claim is without merit as a matter of law.


**V. Title VII Retaliation**

The plaintiff also asserts a retaliation claim under Title VII, based on her alleged complaints of sexual harassment.  To state a claim for retaliation under Title VII, the plaintiff must establish that (1) she engaged in protected activity, as described in Title VII; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and

the adverse employment action.  Long v. Eastfield College, 88 F.3d 300, 304 (5th Cir. 1996).  Barnett alleges that she engaged in protected activity by complaining to Beck about Smith's conduct; that she suffered an adverse employment action when she was fired on May 2, 2005, and that her employer's "'ultimate employment decision' to terminate her was based on her complaints regarding the hostile work environment."  Plaintiff's Brief, p. 12.

The Court must initially determine if Barnett has established the first element of a prima facie case, i.e., that she engaged in activity protected by Title VII.  Title VII prohibits an employer from retaliating against an individual who "participates" in statutorily-protected conduct or who "opposes" conduct made unlawful by the statute.  42 U.S.C. §§ 2000e-3(a).  "Title VII does not require that a plaintiff prove that the conduct opposed was actually in violation of Title VII, but only that a charge was made, or that participation in an investigation of Title VII occurred."  Green v. Admin. of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002).  An informal complaint by an employee "attempting to protest or correct allegedly discriminatory conditions of employment" is sufficient.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 796 (1973).  However, the opposition clause of § 2000e-3(a) requires the employee to demonstrate that she had at least a "reasonable belief" that the practices she opposed were unlawful. Payne v. McLemore's Wholesale and Retail Stores, 654 F.2d 1130,

22

1140 (5th Cir. 1981).  To be reasonable, the plaintiff must show that she subjectively believed that Smith was sexually harassing her, and that her belief was objectively reasonable in light of the facts in the record.  Little v. United Technologies, 103 F.3d 956, 960 (11th Cir. 1997).

In her complaint, Barnett offers only a conclusory declaration:

> That Plaintiff was subjected to a hostile work environment that resulted in [sic] the acts and conduct of the Defendants as set forth herein, and that the Defendants has [sic] certain policies and procedures that were violated as a result of him being discriminated against in violation of the ADEA and Title VII and retaliated against in having reported that he was of the belief that he was being subjected to age and sex bias in violation of the ADEA and Title VII to management; and that "breach" of the implied contract or the violation of the Defendants' policies and procedures was "tortuous" [sic] entitling him to any and all relief available to her under either Federal or State law.

Complaint, ¶ 39.  The fact that this paragraph refers to the plaintiff as a male four times, and the ADEA and "age" discrimination instead of the ADA, gives further support to the finding that the allegation concerning her "belief" is merely conclusory.

In her answers to interrogatories, the plaintiff states, "I believe that my comments and protesting to management about these sexual comments resulted in retaliation in violation of Title VII." Response to Defendants' Interrogatories, No. 18, p. 18.  But nowhere does Barnett state that she told Beck she believed Smith's

behavior was a result of her sex or constituted sexual harassment. The majority of the incidents described by Barnett as forming the bases for her complaints do not relate to sex, nor are they based on sex.[1]  The only allegations that can be construed as relating to sex are Smith's statement that as Dining Room Manager Barnett needed to "grow some balls" in dealing with those she supervised, and Smith's statement "Oh my gosh, she has grown some balls," when complimenting Barnett for doing a good job.  Response to Interrogatories, No. 18, p. 18.

Although Barnett is not required to prove that Smith's behavior constituted sexual harassment under the law, she must show that her belief that Smith's conduct constituted sexual harassment was objectively reasonable.  This objectively reasonable inquiry is based on the substantive law of sexual harassment.  See Harper v. Blockbuster Entertainment, Corp., 139 F.3d 1385, 1388 n.2 (11th Cir. 1998).  Under the substantive law of sexual harassment, in

---

[1] In her responses to interrogatories, the plaintiff states:

Defendant Smith would find daily things to complain about.  The daily confrontations reached the point of ridiculousness.  Defendant Smith spent all his time talking to his Wife who was a bartender. Defendant Smith was never on the floor.  When I would advise him that we needed help on the floor during a busy time, he would not help.  He lived by the theory that I should sink or swim at all times.  He would find any way possible to make me look negative toward Plaintiff [sic] Beck.

Response to Interrogatories, No. 20, p. 20.

24

determining whether a hostile environment exists, a court or jury assesses "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it reasonably interferes with an employee's work performance." Harris, 510 U.S. at 23 (1993). As stated by the United States Supreme Court, "[t]he critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998)(quoting Harris, 510 U.S. at 25 (Ginsburg, J., concurring)). Thus, ultimately, a plaintiff must prove "that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] ... because of ... sex.'" Id.

A plaintiff does not engage in conduct protected by Title VII merely by complaining about conduct she refers to as "sexual harassment." Her complaint must be based on a reasonable, good faith belief that the practice violated Title VII. Clark County School District v. Breeden, 532 U.S. 268 (2001). "This is not to say that ... the plaintiff has to be correct in believing that she had been the victim of [sexual] harassment. Such a requirement would have a chilling effect on workplace harassment complaints." Hamilton v. RDI/Caesars Riverboat Casino LLC, 179 F.Supp.2d 929, 939 (S.D. Ind. 2002). However, the plaintiff's belief must be

reasonable; a "sincere" or "honest" belief is not enough.  <u>Id</u>. at 939 n.2.

In <u>Breeden</u>, the plaintiff alleged retaliation under Title VII based on one inappropriate instance that she believed constituted sexual harassment.  532 U.S. at 270.  In upholding the district court's  grant of summary judgment in favor of the employer, the Supreme Court held that since "offhand comments" and "isolated incidents" do not constitute sexual harassment under Title VII, "[n]o reasonable person could have believed that the single incident recounted above violated Title VII's standard."  <u>Id</u>. at 271.

The imperative "grow some balls," usually used in referring to a male, implies that the person lacks courage or fortitude and needs to develop that trait.  Conversely, to say that someone has "grown some balls" implies that the person has exhibited a newfound courage or resolve.  A reasonable person could fairly characterize these comments as insulting, although the record in this case demonstrates that Smith used the terms in the context of his assessment of Barnett's managing skills.  Still, a reasonable person could conclude that Smith treated Barnett in an insulting manner.  However, Title VII does not prohibit all boorish or rude behavior.  <u>See</u> <u>Oncale</u>, 523 U.S. at 80 (1998).  Although Smith's comments reflect a certain lack of civility, they cannot reasonably be regarded as severe acts of intimidation, ridicule or insult.  A

26

hostile work environment is generally not created by "mere offensive utterance." Harris, 510 U.S. at 23. Nor are "simple teasing, offhand comments, and isolated incidents" enough. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Courts are to use "common sense, and an appropriate sensitivity to social context," in distinguishing between innocuous behavior and severely hostile or abusive conduct. Oncale, 523 U.S. at 82.

Furthermore, in a sex discrimination claim, Title VII only prohibits harassment to the extent it occurs because of an employee's gender. Id. at 78. Accordingly, the ultimate inquiry is whether the plaintiff can prove "that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimina[tion] ... because of ... sex." Id. "Thus, the complained-of conduct must have either a sexual character or purpose to support a Title VII claim." Marting v. Crawford & Co., 203 F.Supp.2d 958, 967 (N.D. Ill. 2002)(citation omitted). "The record must demonstrate that the abuse was motivated by [the plaintiff's] gender rather than by a personal dislike, grudge, or workplace dispute unrelated to gender." Id. (citations omitted). A review of all of Smith's remarks of which Barnett complains reveals that they were motivated by his criticism of her work performance, not because of her gender. See Spearman v. Ford Motor Co., 231 F.3d 1080, 1085 (7th Cir. 2000)(no sexual harassment where explicit insults were employed to express acrimony over work-

27

related disputes).  The words "bitch" and "ball-buster" have been found not to be inherently sexual, and in certain situations to "evince[] a personal dislike as opposed to a gender bias." Marting, 203 F.Supp.2d at 968.  That is certainly the situation here, where Smith's use of the term "grow some balls" was used in the context of critiquing the plaintiff's job performance and not with any reference to her gender.

The record is utterly void of facts to support the contention that Smith's conduct was motivated by animus directed towards the plaintiff's gender.  The court therefore finds that no jury could find that a belief that the above-described behavior constituted sexual harassment was objectively reasonable.  No reasonable person would believe that the remarks made by Smith were sufficient to constitute unlawful employment practices under Title VII. Therefore, no reasonable juror could find that Barnett engaged in protected conduct under Title VII when she complained to Beck about the way in which Smith had treated her.  Summary judgment shall be granted on the plaintiff's retaliation claim under Title VII.

## VI. State Law Claims

In deciding whether to exercise supplemental jurisdiction over the plaintiff's state law claims, the Court is guided by 28 U.S.C.

28

§ 1367, which gives federal courts jurisdiction over state law claims in limited circumstances:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  Section 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction."  As the commentary to section 1367(c)(3) explains:

> the idea here is that once the crutch is removed – the claim that supports the supplemental jurisdiction of the other claim or claims – the other should not remain for adjudication ... .

28 U.S.C. § 1367 Practice Commentary (West Supp. 1993).  District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over state claims once all federal claims are dismissed.  Noble v. White, 996 F.2d 797, 799 (5th Cir. 1993). In fact, the Fifth Circuit's "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."  Parker & Parsley Petroleum v. Dresser Industries, 972 F.2d 580, 585 (5th Cir. 1992)(citing Wong v. Stripling, 881 F.2d 200, 204 (5th Cir. 1989)); see also Rhyne v. Henderson County, 973 F.2d 386, 395 (5th Cir. 1992).

The Court is guided by the considerations of "judicial economy, convenience, fairness and comity." <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988).  In <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966), the Supreme Court emphasized that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law."

Because there exists no independent basis of federal jurisdiction, and in the interest of comity, judicial economy, convenience, and fairness to the litigants, the Court exercises its discretion pursuant to 28 U.S.C. § 1367 and declines to exercise supplemental jurisdiction over the plaintiff's state law claims.

Nothing in this opinion should be construed as a comment on the merits of the plaintiff's state law claims.  States may recognize positive duties of care and make the breach of those duties tortious; whereas the only duties of care that may be enforced in suits under the ADA and Title VII are duties found in the Constitution or laws of the United States.

As for the defendants' motion to strike affidavits of Chris Barnett and Joyce McPherson, the defendants move to strike the affidavits of the plaintiff's husband and mother on the grounds that neither witness was identified in the plaintiff's responses to discovery, and the defendants have not had an opportunity to take their depositions.  However, since the affidavits do not contain

any information which would create a genuine issue of material
fact, the defendants' motion shall be denied as moot.

Accordingly,

IT IS HEREBY ORDERED that the defendants' motion for summary
judgment **(docket entry 18)** is GRANTED as to all federal claims;

FURTHER ORDERED that the Court declines to exercise
supplemental jurisdiction over the plaintiff's state law claims,
and they shall be dismissed without prejudice;

FURTHER ORDERED that the defendants' motion to strike
affidavits of Chris Barnett and Joyce McPherson **(docket entry 28)**
is DENIED as moot.

A separate Final Judgment in accordance with Fed.R.Civ.P. 58
shall follow.

SO ORDERED, this the 8th day of December, 2006.


                                    S/DAVID BRAMLETTE
                                    UNITED STATES DISTRICT JUDGE

31